# Kirkbride *v.* Harvey.

*Habeas Corpus Proceedings to obtain Custody of Child.*

1. *Habeas corpus by father to obtain custody of his child.*—When a minor is out of the custody of his father, and *habeas corpus* is resorted to by the latter to obtain such custody, the court is clothed with a sound discretion to grant or refuse relief, al-

ways to be exercised for the benefit of the infant primarily, but not arbitrarily in disregard of the father's natural right to be preferred. If the father be reasonably suitable and able to maintain and rear his child, the prayer of his petition should ordinarily be granted; but if he be unsuitable or unable properly to care for the child, and especially if the child, having sufficient judgment, prefers not to return to him, the court should refuse the relief sought and leave the parties *in statu quo.*

APPEAL from the City Court of Mobile.

Heard before the Hon. O. J. SEMMES.

The appellee, K. B. Harvey, filed a petition for *habeas corpus,* addressed to the Judge of the City Court of Mobile, in which he sought to obtain the custody and control of his infant daughter, Marina E. Harvey, a little girl of five and a half years old, and who was, at the time of the filing of the petition, in the custody and control of the appellant, E. B. Kirkbride. The facts of the case are sufficiently stated in the opinion.

Upon the hearing of the cause, the judge of the city court granted the prayer of the petition, and awarded to the petitioner the custody of his infant child. From this decree the respondent appeals, and assigns the rendition thereof as error.

L. H. & E. W. FAITH, for appellant.—Under the facts shown in the present case, the respondent was entitled to retain the custody and control of the infant child of the petitioner.—*Ex parte Murphy,* 75 Ala. 411; *Brinster v. Compton,* 68 Ala. 302; *Neville v. Reed,* 134 Ala. 317.

We apprehend the rule applicable in such cases as this to be correctly stated as follows: "Upon *habeas corpus* brought by the father for his children, the court will not as a matter of course order them to be delivered up to him, but only in case they are improperly restrained of their liberty. The office of the writ is not to recover possession of the persons detained, but to free them from all illegal restraints upon their liberty, and, therefore, in cases where infant children *are not in the custody of improper persons,* and are not restrained against their

[Kirkbride v. Harvey.]

will, they will not on *habeas corpus,* be delivered to their
father.  *  *  When the infants are too young to exer-
cise any discretion, the court will determine for them,
and adjudge the custody to such of the parties as may
be considered most advantageous to the infants."—*State
ex rel Baird.* 18 N. J. Eq. 194; *Corrie v. Corrie,* 42 Mich.
509.

After the affections of both child and adopted parent
become engaged, and conditions exist which cannot be
changed without risk to the happiness of the child, and
the parent desires to reclaim it, he is not in a position
to ask a court to interfere in his favor.  His parental
rights must yield to the feelings, interests and rights of
other parties acquired with his consent."—1 Bailey on
Jurisdiction, page 370; *Clark v. Bayer,* 32 Ohio St. 299;
*State v. Smith,* 6 Greenl. 462; *Dumaine v. Gwynne,* 10
Allen 270; *Bonnett v. Bonnett,* 61 Iowa 199; *United
State v. Green,* 3 Mason 482; *Brinster v. Compton,* 68
Ala. 299; 15 Am. & Eng. Encyc. of Law, (2d ed.) 183;
*Merritt v. Swimley,* 82 Va. 433; *Merritt v. Swimley,* 3
Am. St. Rep. 115; Heard on *Habeas Corpus,* 528; *Matter
of McDowell's,* 8 Johns. 328; *In re Waldron,* 13 Johns.
418; *Ellis v. Jessup,* 11 Bush (Ky.) 403; Tyler on In-
fancy & Coverture, 283; *Chopsky v. Wood,* 26 Kan. 657;
Church on *Habeas Corpus,* p. 702; *Stringfellow v. Som-
erville,* 95 Va. 701; *Green v. Campbell,* 35 W. Va. 698.

M. D. WICKERSHAM, *contra.*

SHARPE, J.—"When an infant child or minor is out
of the possession and custody of the father, and *habeas
corpus* is resorted to by the latter to obtain such custody,
it does not follow as a matter of right that the prayer of
the petition will be granted.  The court is clothed with
a sound discretion to grant or refuse relief, always to be
exercised for the benefit of the infant primarily, but not
arbitrarily in disregard of the father's natural right to
be preferred.  If the father be reasonably suitable and
able to maintain and rear his child, his prayer should
ordinarily be granted.  If, on the other hand, he be un-
suitable or unable properly to care for his offspring, and

especially if that offspring, having sufficient judgment, prefer not to return to him, the court should grant no relief in the premises but leave the parties *in statu quo.*"—*Brinster v. Compton,* 68 Ala. 299; *Ex parte Botz,* 31 Ala. 425; *Ex parte Murphy,* 75 Ala. 409; *Neville v. Reed,* 134 Ala. 320. The foregoing quotation from *Brinster v. Compton,* states the law of this case. The trial judge having awarded the custody of the infant in accordance with the right established *prima facie* by the fact of paternity, the question for review is whether out of regard for the infant's welfare the enforcement of the right should have been denied.

Marina E. Harvey, who is the subject of this controversy, was at the time of the trial about five and a half years old. Her parents were petitioner and his former wife, Mattie G. Harvey, who was a sister of Fannie Kirkbride, the respondent's wife, and who, when she married petitioner, was a widow and the mother of two children of her previous marriage. Marina was born in September, 1897, at Punta Gorda, Florida, where her parents then resided and where petitioner still resides. In November, 1898, petitioner and his family, on returning from a northern journey, visited respondent's home which was then and still is in Mobile, Alabama. After staying there a few days, petitioner proceeded to Punta Gorda, leaving his wife and her children at respondent's house to remain on a visit there until after the succeeding Christmas holidays. While on the northern trip the mother had a cough and at respondent's house her malady increased so that she remained there until the following March when she died. She left a last will in which was the following clause: "My husband has done much to alienate my affections from him by his treatment of me, and I do not desire my children to be in his custody or control. I will and desire that all of my children, including Marina, the youngest, shall be, and remain under the care, custody and control of my sister, Fannie G. Kirkbride, and of her husband, E. B. Kirkbride, and I expressly desire my sister Fannie to undertake the care and nurture of my youngest child Marina."

Ever since the mother's death the child has remained with respondent and his wife, and has received from them kind and careful nurture, which has resulted in restoring her from exceedingly frail health to apparently good health, but according to the evidence, she is of such delicate constitution that unusual care is requisite for preservation of her health. It appears from the record, as proved by undisputed evidence, that respondent is well able to provide for the child, that he "is a man honored and respected by his neighbors and acquaintances as a man of high character, amiable disposition and a lover of children," that Mrs. Kirkbride is of like disposition and that the child is "devoted" to her. The conduct of the Kirkbrides extending over four years of the more helpless period of the child's infancy gives evidence that they would not be remiss in the bestowal of needed care in the future. Seemingly, from the standpoint of the child's interest, no mistake could be made in allowing them to remain her custodians until she becomes more independent of assistance.

That petitioner can be depended upon to furnish the guidance and attention demanded by the sex, age and health of the child, admits of no question. It is shown that he is engaged in a respectable and probably lucrative occupation, and has means, the character and value of which is not proved. But in the record there is evidence tending strongly to show that he has in the past been neglectful of paternal duties, and that his life with Marina's mother was attended with much domestic infelicity, some details of which are referred to in a letter from him to Mrs. Kirkbride, which is in evidence. After leaving the mother in November, 1898, he did not return to Mobile until July, 1899, though in the meantime, he was several times informed of the mother's sickness by letters and telegrams, and was informed at least once of the child's sickness by a letter from his stepdaughter, in which she wrote, "mamma has been dreadfully sick for about three weeks in bed and besides the first time. Marina has been sick again with high fever and cold. She was sick enough to have a doctor." On December 29, 1898, respondent wrote petitioner of the mother's ill

health, stating among other things, "Dr. Ketchum has been to see her five or six times. He pronounces her a wreck physically, and holds out but faint hopes for her recovery. He gave peremptory orders to wean Marina and as a sequel she suffered a few days but is now all right." In a letter from the mother to the petitioner, dated January 4, 1899, she wrote: "It seems very hard to make you understand how dreadfully sick I have been and am. In a letter to him from Mrs. Kirkbride, dated February 25, 1899, was written, "Judging from your letter to Minnie (his step-daughter) you certainly don't understand that her mother is seriously ill, is in the last stages of consumption, has been in bed two months, and will never be up again until she is carried out to her last resting place." On March 4th, respondent wired petitioner that Mrs. Harvey died on the morning of that day.

The record recites that petitioner testified, "that he and his deceased wife had gotten along nicely, and had had no trouble or unpleasantness in their married life. He also testified that he did not come to Mobile after the death of his said wife Mattie, until in July, 1899. He did not hear of his wife's serious illness till just before her death, nor did he hear of her death till it was too late to attend the funeral." If the petitioner failed to comprehend the import of the communications above mentioned, he might be, unfortunately obtuse in comprehending emergencies that may involve the welfare of the child in future. There is evidence indicating that he is high tempered and irritable, and such characteristics may render him in some degree inefficient for the training of a female infant; besides, it is common knowledge that efficiency in such regard is a rare attainment for one of the masculine sex. Petitioner remarried in 1901, but what offices his present wife would volunteer in the matter of nurture and training is necessarily left to conjecture. Apparently the proposed change of custody, if awarded, will result in a removal of the child to Punta Gorda, and a consequent severance of associations between her and blood relatives which have thus far served her beneficially. That the mother was without legal

[Shafer & Co. v. Hausman.]

power to divest by will petitioner's rights pertaining to the child's custody, is conceded, yet to change as is here proposed, the conditions which have arisen in pursuance of the attempted testamentary disposition, would involve an experiment, such as the evidence does not warrant the court in promoting. The judgment appealed from will be reversed and judgment will be here rendered dismissing the petition.

Reversed and rendered.