(101 So. 738)

## THOMAS v. THOMAS. (1 Div. 333.)

(Supreme Court of Alabama. Oct. 23, 1924.)

**1. Parent and child ☞2(4)—Chancery jurisdiction to determine custody of infants invoked either by petition or bill filed in court or petition for habeas corpus.**

Custody of infants is matter of inherent chancery jurisdiction which, however, may be invoked by petition or bill filed in court or petition for habeas corpus, since nature of relief sought determines character of proceedings.

**2. Habeas corpus ☞14 — Habeas corpus an appropriate remedy to determine custody of children.**

Habeas corpus is an appropriate remedy to determine custody of children whether sought by husband or wife or another.

**3. Parent and child ☞2(3) — Principle that court should look first to good of children recognized by statutes governing custody.**

Code 1907, §§ 3808, 4503, providing for custody of children upon divorce or abandonment of wife by husband, or voluntary separation, *held* to recognize principle that court should look first to good of children.

**4. Parent and child ☞2(2)—Recognized by statute that husband, though abandoned by wife, has not unqualified right to children under seven.**

Provision in Code 1907, § 3808, that in case of abandonment of husband by wife former shall have custody of children after they are seven years old, recognizes that husband has not unqualified right to children under seven, even though wife was at fault in separation.

**5. Parent and child ☞2(4)—In proceedings by wife for custody of child, it was error to exclude evidence of husband's failure to support his family.**

In proceedings by wife for custody of child, evidence that husband's mother repeatedly paid his debts was improperly excluded.

**6. Parent and child ☞2(4)—In mother's proceeding for custody of child, her father's explanation of his hostile attitude to child's father improperly excluded.**

Where, in proceedings by wife for custody of child, there was an issue as to separation being caused by wife's father, latter's testimony as to daughter's complaint of mistreatment by husband was improperly excluded.

Appeal from Circuit Court, Mobile County; Claude A. Grayson, Judge.

Proceeding by habeas corpus by Irma Thomas against Benjamin R. Thomas for custody of a child. From a judgment or decree dismissing the petition, petitioner appeals. Transferred from Court of Appeals under section 6, page 450, Acts 1911. Reversed and remanded.

Inge & Bates, of Mobile, for appellant.

The paramount consideration in a case of this kind is the well-being and good of the infant. Coleman v. Coleman, 198 Ala. 225, 73 So. 473; Pearce v. Pearce, 136 Ala. 188, 33 So. 883; Ex parte Boaz, 31 Ala. 425; Neville v. Reed, 134 Ala. 317, 32 So. 659, 92 Am. St. Rep. 35; Kirkbride v. Harvey, 139 Ala. 231, 35 So. 848; Brown v. Brown, 2 Ala. App. 461, 56 So. 589; Saunders v. Saunders, 166 Ala. 351, 52 So. 310; Brinster v. Compton, 68 Ala. 299; Montgomery v. Hughes, 4 Ala. App. 245, 58 So. 113. Under the circumstances of this case, the wife is entitled to the custody of the child, a female, three years of age. Code 1907, §§ 3808, 4503.

Robert H. McConnell, of Mobile, for appellee.

The father is the head of the family and the law commits the custody of the children to his charge in preference to any one else. Neville v. Reed, 134 Ala. 317, 32 So. 659, 92 Am. St. Rep. 35; Ex parte Boaz, 31 Ala. 425. When the wife abandons the husband, she cannot maintain habeas corpus for possession of a child. Brinster v. Compton, 68 Ala. 299; Kirkbride v. Harvey, 139 Ala. 231, 35 So. 848; Bradley v. Bennett, 168 Ala. 240, 53 So. 262; 21 Cyc. 289.

BOULDIN, J. Irma Thomas, the wife, instituted proceedings by habeas corpus against Benjamin R. Thomas, the husband, to obtain the custody of their three year old child, June Thomas.

On hearing the testimony of petitioner and her witnesses, and the testimony of respondent's mother on his behalf, the trial court announced that he did not care to hear further testimony, and dismissed the petition, thus awarding the little girl to the father. From this order the appeal is prosecuted.

The point is made that a writ of habeas corpus will not be awarded to take the custody of an infant from the father. It is suggested that in law the father is the legal custodian of his infant child; that, there being no unlawful restraint of the child's liberty, the chancery court alone has power to disturb his custody in the exercise of the power of the state as parens patriæ. This rule was declared in Ex parte Boaz, 31 Ala. 425–427, a habeas corpus proceeding before the judge of probate instituted by the wife against the husband.

The same case declared that, where the infant is out of the custody of the father, and he asserts his right thereto by habeas corpus, the court exercises a discretion for the benefit and welfare of the infant, and may leave it in the custody of the mother or some other person, in preference to the claims of the father.

This discretion is exercised primarily for the benefit of the infant, but not arbitrarily, in disregard of the father's natural right to be preferred. Kirkbride v. Harvey, 139 Ala. 231, 35 So. 848; Neville v. Reed, 134 Ala. 317, 32 So. 659, 92 Am. St. Rep. 35; Bradley v. Bennett, 168 Ala. 240, 53 So. 262; Brinster v. Compton, 68 Ala. 299. The petition in the case at bar was addressed to the judges of the circuit court of Mobile, having the powers exercised by chancellors.

[1] The custody of infants is a matter of inherent jurisdiction in a court of chancery. It seems to be settled in Alabama that in the exercise of this jurisdiction, independent of statute, it is immaterial whether the jurisdiction is invoked by petition or bill filed in court, or by petition for habeas corpus addressed to the judge. The nature of the relief sought determines the character of the proceedings. Murphree v. Hanson, 197 Ala. 246, 72 So. 437; McDaniel v. Youngblood, 201 Ala. 260, 77 So. 674; Woodruff v. Conley, 50 Ala. 304; Blackburn v. Moore, 206 Ala. 335, 89 So. 745; Coleman v. Coleman, 198 Ala. 225, 73 So. 473. The writ of habeas corpus has been extended in most of the states to controversies touching the custody of infants, and the jurisdiction thus invoked is exercised on the same principles as in chancery. 29 C. J. p. 108, § 101, note 7.

[2] We hold this an appropriate remedy, whether invoked by the husband or the wife, or other person. One incident in the case at bar emphasizes the justice of such a rule. The infant child was in the undisturbed custody of the wife, who had taken her to the home of the wife's father while the husband was confined in jail. The husband and father entered that home and took the child from the mother by force and violence. To say the least, this fact should place him in no better position in the courts in a proceeding to determine the rightful custodian of the child. Otherwise, the law would encourage unseemly scrambles between the strong and the weak, and invite breaches of the peace. No more delicate nor difficult duty devolves upon courts than is presented here in a controversy between a husband and an estranged wife touching the custody and care of their child.

[3] Our attention is directed to two statutes (sections 3808 and 4503 of the Code of 1907), which read as follows:

"Upon granting a divorce, the court may give the custody and education of the children of the marriage to either father or mother, as may seem right and proper, having regard to the moral character and prudence of the parents, the age and sex of the children; and pending the suit may make such orders in respect to the custody of the children as their safety and well-being may require. But in cases of abandonment of the husband by the wife, he shall have the custody of the children after they are seven years old, if he is a suitable person to have such charge. * * *"

"In all cases of voluntary separation of husband and wife, the court of chancery has power, on the petition of either party, twenty days' notice thereof being given to the other, to permit either the father or mother to have the custody and control of the children, and to superintend and direct their education, having regard to the prudence, ability, and fitness of the parents, and the age and sex of the children."

In general, these statutes merely recognize the oft-declared principle that the court should look first to the good of the child. Section 3808 has the added provision that in case of abandonment of the husband by the wife the husband, if suitable, shall have the children after arriving at the age of seven years.

[4] This provision is a recognition of the fact that during the very tender years of the child the husband has not an unqualified right to its custody, even when the wife is. at fault in the separation. Mothering of a young child is one of its rights. None but the real mother can meet this high duty in full measure. It is proper here to say that no line of the testimony questions the character of this petitioner, nor her devotion and motherly care for her children.

In studying this case, we are mindful of the fact that the witnesses and parties were before the trial judge; he saw and heard the witnesses, and noted the personality of the parties. Reluctantly do we question his judgment. Still, it must be noted that the evidence of this petitioner and her witnesses on the main issue stands uncontradicted.

Briefly, it appears the petitioner is twenty-one years of age; has been married to respondent four years; that three children were born of the marriage; one died, and June, three years of age, and a baby, six months old, survive. Neither of the parties own any property of value. Petitioner has a father and mother living, able and willing to furnish a home for petitioner and her children during their tender years. Respondent's mother is living, and is able and willing to furnish a home for and mother her son's child. She is less incumbered with other family duties than the father and mother of petitioner.

Passing by the separation on two former occasions, and the alleged cruelty toward petitioner, which she had evidently forgiven, and further assuming that respondent had provided a home and fairly sufficient maintenance for his family, it still appears that he was repeatedly arrested for the embezzlement of the funds of his employer while acting as salesman; that on the occasion of the last separation he remained in jail six weeks before making bond. It is admitted in the testimony on his behalf that he was allowed to so remain in jail that his wife might sell the family furniture and her ring

to pay up his default. It is not denied that his mother had paid him out before.

[5] At this point, the court below was in error in refusing the question propounded to respondent's mother on cross-examination, viz.: "Haven't you repeatedly paid up his debts?" There was an issue as to the support of his family, an issue as to his working qualities, an issue as to his habits about town, as well as an issue as to his fitness in point of character to have the rearing of a child. If he repeatedly ran in debt to be taken care of by his mother, this circumstance was pertinent.

[6] The question propounded to Mr. Ross, father of petitioner, viz., "Did your daughter ever complain to you at any time of any mistreatment by her husband?" was rendered proper by the issues made in the case.

Emphasis was put on the dislike of Mr. Ross for respondent; a charge was made in court by respondent that petitioner was afraid of her father and mother, and a declaration made that he could reclaim his wife and children, if allowed a private interview, which the wife then and there declined after due assurances from the court. The action of Mr. Ross in going to Mrs. Penny's home for his daughter on a former occasion was fully drawn out. A fair consideration of this phase of the case called for the inquiry as to why this alleged activity of a father on behalf of his daughter. There was error in refusing this testimony. The extent to which respondent provided for his family was an issue, but this was not provable by hearsay. There was no error in the other rulings on evidence presented for review.

The husband's appeal for the return of his wife and his longing for his children deserved at the hands of the trial judge that friendly consideration which it received. In studying the attitude of his wife, we are impressed with the letter in evidence and her kindly attentions to him while in jail. This letter shows a wifely interest in his comfort, a readiness to sacrifice for him, a boosting of his courage and fortitude, and finally an appeal to him to be a man. There is a note of loyalty mingled with one of well-nigh despair. We cannot escape the conclusion that his conduct has slowly but surely undermined the wife's faith, and weakened —we hope not destroyed—her love. His conduct after getting out of jail, in taking his wife virtually by force from her father's home, and in snatching June from her side, tended rather to make matters more acute at the time of the trial. He was domineering when he was due to be penitent.

The testimony was not all in when the trial was closed. More than a year has now elapsed during which the father has had time to prove his purpose to make good. If this unhappy breaking up of a home still

continues, the case should be retried in the light of all the facts up to the present.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.