1 So.2d 18

### GOLDMAN v. HICKS.

### 6 Div. 781.

Supreme Court of Alabama.

Jan. 16, 1941.

Rehearing Denied March 27, 1941.

1 240 Ala. 681.

Horace C. Wilkinson, of Birmingham, for appellee.

Harris & Brown, of Birmingham, for appellant.

**LIVINGSTON, Justice.**

This is a proceeding to determine the right of the custody and control of Lorraine Hicks, the five year old daughter of the parties to this cause.

In May, 1939, the parties to this litigation, who were then husband and wife, made and entered into the following agreement:

"State of Alabama
"Jefferson County

"This agreement made and entered into on this the ——— day of May, 1939, by and between Madge Hardy Hicks, hereinafter referred to as the party of the first part, and William H. Hicks, hereinafter referred to as the party of the second part:

"Witnesseth:

"Whereas, the parties hereto have been husband and wife for a period of six years, and as a result of such union have one child, Lorraine Hicks, three and one-half years of age; and

"Whereas, said parties have definitely concluded that under conditions now existing it is impracticable for them to live together as man and wife,

"Now, therefore, in consideration thereof, And of the mutual agreements hereinafter made, they have mutually agreed to a complete separation under the following express terms and conditions:

"1. The said parties shall entirely and completely separate as man and wife, live separate and apart, and neither party hereafter shall in any way harass, threaten, intimidate, or otherwise act in any way so as to embarrass or humiliate the other party.

"2. The party of the first part shall have the custody, control and support of the child, Lorraine Hicks, for six months beginning with the 1st day of June, 1939, and expiring on the 30th day of November, 1939, and the party of the second part shall have the custody, control and support of the child, Lorraine Hicks, for six months beginning with the 1st day of December, 1939, and expiring on the 31st day of May, 1940, and thereafter said parties shall have, for alternate periods of six months each, the custody, control and support of said child. During the period of time that either party has the control, custody and support of such child, such party shall be entirely responsible for her support and maintenance. It is understood and agreed, however, during the period of time that the child is in the custody, control and support of one of said parties, the other party shall have the right at convenient times of access and visitation of the child, such access and visitation to be exercised in a proper and reasonable manner and at such times as may be convenient to and consented to by the party who has the custody, support and control of the child hereunder.

"It is understood and agreed that if the exigencies of education or other factors in the best interest of the child make it desirable that the times for the custody, support and control as herein agreed to be changed or modified, this agreement is subject to such modification or change upon the joint consent of the parties hereto. It is further agreed and understood that the child shall not be, by either party hereto removed for any permanent period or permanent residence from the State of Alabama without the written consent of the other party.

"3. The party of the second part agrees to pay to the party of the first part for the support and maintenance of herself and child, on or before the fifth day of each month, the sum of one hundred and twenty-five ($125.00); it being understood and agreed that in consideration of the prompt payment of said sum, he shall be, and hereby is, released from any further obligation of any kind or character by way of alimony, court decree or otherwise, to contribute towards the support and maintenance of said child, or of the party of the first part, and that he shall not be in any way liable for any debts that may be incurred by the party of the first part, and the party of the first part agrees that she will not in any way use the credit of the party of the second part, or in any way attempt to make charges or credit accounts against him, the purpose of this agreement being to definitely fix the amount for which the party of the second part shall be liable for the support and maintenance of his wife and child. This agreement is based upon the present income of the party of the second part, which is $216.00 per month. It is, therefore, agreed and understood that if his income should be increased or diminished, the amount of payment herein agreed

to be made is to be increased or diminished in accordance with the proportion that the payments agreed to be made bear to his present income.

"It is further agreed and understood that during the six months periods when the party of the second part has custody, control and support of said child, the amount to be paid to the party of the first part by the party of the second part shall be reduced from one hundred and twenty-five dollars ($125.00) per month to one hundred dollars ($100.00) per month.

"It is further agreed and understood that in the event the party of the first part should be able to obtain a divorce from the party of the second part in the suit which she intends to bring, and should thereafter marry, that thereupon any right on the part of the party of the second part to pay the party of the first part any money for her own support and maintenance or otherwise shall immediately cease. It is further agreed and understood that in the event either of the parties hereto shall re-marry, then this agreement shall be modified and changed in accordance with existing conditions, and the agreement of the parties hereto; such agreement to be subject to the approval of the court granting such divorce, and if an agreement is not reached between the parties the determination of the custody, support and control of the child shall be in accordance with the orders and decrees of said court.

"The party of the first part has contemporaneously herewith given to the party of the second part a statement of all her debts and liabilities existing at the present time, for which the party of the second part is in all respects liable, and it is agreed and understood that the party of the second part shall remain liable for such items, but shall not be in any way liable for any other items of indebtedness that are not set forth in said statement, and if he should be called upon by anyone to pay any additional items, he is authorized to deduct such additional amounts for the payments which he has agreed herein to make to the party of the first part.

"In the event the party of the first part insists on her express determination to file a suit for divorce against the party of the second part, it shall be thoroughly understood that the party of the second part denies and expects to continue to deny that she is in any way entitled to a divorce, and in the event the court, upon hearing, should decide that the party of the first part is entitled to a divorce, then it is agreed and understood that this agreement and all of its terms shall be submitted to the court for its approval, and shall not be executed until and unless the court does approve the same.

"It is further understood and agreed that under such conditions, the court thereafter shall reserve and maintain its right in the interest of the welfare of the child to make such changes in reference to the custody, control and support of the child as the court may determine, after proper hearing with due notice, is in the best interests of the child.

"This agreement has been made and executed by the parties hereto on the day and date hereinabove first set forth, in good faith, with full understanding of all of its provisions, and with the mutual promise on the part of each to comply therewith faithfully and completely."

On August 1, 1939, the appellant here was granted a divorce from appellee on account of actual violence committed by appellee on her person, attended with danger to her life or health, and conduct on the part of appellee putting appellant in reasonable apprehension of such actual violence upon her person, attended with danger to her life or health. The agreement hereinabove set out was incorporated in, and made a part of, the divorce decree of August 1, 1939, and the custody of Lorraine Hicks fixed in accordance with the provisions of the agreement.

On February 1, 1940, the appellant, Madge Hardy Hicks, married one Godfrey Goldman. Thereafter, the appellee, William H. Hicks, filed in the Circuit Court of Jefferson County, in equity, the bill of complaint now under consideration, and in which he seeks the exclusive custody and control of Lorraine Hicks. Appellant answered, making her answer a cross-bill, and praying for the exclusive custody and control of the infant.

On October 26, 1940, the lower court made and entered a decree granting the care, custody and control of Lorraine Hicks to the father, William H. Hicks, and denied the relief prayed for in the cross-bill of the mother, Madge Hardy Goldman. The decree also provided for liberal visitation privileges to the mother. The court further expressly reserved the right to modify the decree as the future welfare of the in-

fant may require. From this decree, the mother, appellant, prosecutes this appeal.

■ It is the well-established rule in this State that, in determining who should have the custody of children, the best interest and welfare of the child or children should be the controlling and paramount inquiry, Hawkins v. Hawkins, 219 Ala. 31, 121 So. 92; Butler v. Butler, 222 Ala. 684, 134 So. 129; Thomas v. Thomas, 212 Ala. 85, 101 So. 738, nor is it here denied that such is the rule. Any agreement in reference thereto is not controlling.

This court, in the case of Thomas v. Thomas, 212 Ala. 85, 101 So. 738, 739, speaking through Mr. Justice Bouldin, said: "During the very tender years of the child the husband has not an unqualified right to its custody, even when the wife is at fault in the separation. Mothering of a young child is one of its rights. None but the real mother can meet this high duty in full measure."

■ Our cases, in certain instances, make a distinction according to the sex of the child, the father being preferred as to males and the mother as to females. On the other hand, it has been generally held that where a child is of such tender age as to require the care and attention that a mother is especially fitted to bestow upon it, the mother, rather than the father, is the proper custodian, unless, of course, for some reason she is unfit for the trust.

We make no attempt to detail the evidence in this cause; but suffice it to say a careful examination of the record fails to disclose anything which in any manner materially reflects upon the character or integrity of either the appellant or appellee. Indeed, the learned trial judge, after completion of the testimony ore tenus, appears to have been of the same opinion. He was prompted to make the observation, among others, from the bench that his decree would not be based upon the thought that either party was unworthy of the child's custody.

■ Appellee contends, however, that notwithstanding the general rules governing such cases, and the tendency of the evidence hereinabove indicated, the subsequent marriage of appellant to a man of the Jewish race creates a condition which renders her unfit or unsuitable for the care and custody of her child. In this, we cannot concur. Marriages which are not forbidden by statute, or violative of social morality, can have no such effect in this State. No doubt the character of appellant's present husband is a matter pertinent to the issue in this case. The record amply supports our conclusion; in fact, it is admitted that he is a man of exemplary habits and splendid character.

■ In our opinion, no greater calamity can befall an infant daughter than to deprive her of a mother's care, vigilance and understanding. A mother's sympathetic love exerts an influence on her life and character, perceptible only in its results. Therefore, courts are reluctant to deprive her of the custody of her infant daughter, and seldom, if ever, do so, unless misconduct is imputable to her. Anonymous, 55 Ala. 428, 432.

■ In studying this case, we are fully mindful of the fact that the witnesses and parties were before the trial judge; that he saw and heard the witnesses and noted the personalities of the parties. Still, there is little, if any, contradiction in the testimony touching the material issue in the case. When such is the case, this court should render such judgment or decree as should have been rendered by the trial court, notwithstanding the presumption which favors upholding its decree.

■ After a careful consideration of the record, we are convinced the decree of the trial court is erroneous. We are further of the opinion that the agreement of the parties with reference to the custody of Lorraine Hicks, as embodied in the divorce decree of August 1, 1939, will best preserve the interest and welfare of the child. A decree is here rendered dismissing the original bill and cross-bill.

Reversed and rendered.

GARDNER, C. J., and BOULDIN and FOSTER, JJ., concur.