18 So.2d 730

ARNOLD v. ARNOLD (two cases).

6 Div. 131.

6 Div. 226.

Supreme Court of Alabama.

June 15, 1944.

Rehearing Denied July 25, 1944.

Beddow, Ray & Jones, of Birmingham, for appellant.

Wm. Marvin Woodall, of Birmingham, for appellee.

BROWN, Justice (after stating the facts as above).

The allegations of the original bill filed by appellee Arnold do not bring the case within the influence of §§ 79, 80 of Code 1940, Title 34. These sections of the Code apply only to separations voluntary on the part of both husband and wife. Such separation may be implied from the acts of the parties as well as express. Anonymous, 55 Ala. 428; Anonymous, 206 Ala. 295, 89 So. 462; Royal v. Royal, 167 Ala. 510, 52 So. 735; Butler v. Butler, 222 Ala. 684, 134 So. 129.

The bill alleges that "the defendant voluntarily and without just cause left the home of plaintiff and defendant which they had established at 1313 16th Place Southwest, * * * and carried with her at that time the only child born of said marriage, which is a boy now 4 years of age, and whose name is Benjamin Robert Arnold and who is with his mother at this time over the protest and wish and against the rights of the plaintiff and also against the best interest of said child as hereinafter set forth." These allegations show a wrongful abandonment by the wife over the husband's protest.

It is, however, well settled law that the State as parens patriae is the supreme guardian of all minors within its jurisdiction, and that courts of equity, as part of the State's judicial system, have inherent power, and will when their jurisdiction is duly invoked, intervene to protect the welfare and best interest of minor children whose welfare is jeopardized by controversies between their parents, and the court may deprive either or both of their custody and place them in the custody of a third

person or institution, regarding the best interest of the child as the paramount consideration. Burns v. Shapley, 16 Ala.App. 297, 77 So. 447; Kirkbride v. Harvey, 139 Ala. 231, 35 So. 848; Neville v. Reed, 134 Ala. 317, 32 So. 659, 92 Am.St.Rep. 35; Murphree v. Hanson, 197 Ala. 246, 72 So. 437; Children's Aid Soc. v. Davis et ux., 211 Ala. 344, 100 So. 325; Bryan v. Bryan, 34 Ala. 516; McLellan v. McLellan, 220 Ala. 376, 125 So. 225, 226.

■ While this bill alleges "that the defendant is not a suitable and fit person to have the care, custody and control permanently of their said child, because she is irreligious, exceedingly nervous and disrespectful of said child and believes in and practices whipping it unmercifully and without provocation, and if with provocation, does excessive whipping of it;" it also alleges, "That Plaintiff's said wife has not been a true wife to him, in the true relationship of husband and wife, for a long time now, to-wit: Two years, during which time she has not permitted conjugal embraces with the Plaintiff and she had no just cause to so act and hold herself aloof from him as her husband; and that such indifference and misconduct, and wrongful conduct and attitude of his wife toward plaintiff has made life miserable for him, has undermined his nervous system and has made him both mentally and physically sick, * * *."

The bill does not aver that the complainant was without fault in causing the separation, nor does it aver that the mother, having regard to her prudence, ability and fitness, and the age of the child, is not a fit and suitable person to have his custody, control and care, matters of utmost importance to be stated in controversies such as this,—where one parent is seeking to take the custody of a child of tender years from the other—especially the mother. McLellan v. McLellan, supra. In that case the court observed:—"The common-law right of the parents in any case are limited by the rule which, following many adjudications, was accepted and enforced in Children's Aid Society v. Davis, supra, and is affected in its administration by the consideration that children of very tender years will be presumed to fare better in the care of the mother, even though she be not wholly free of fault in the matter of her separation from the father. This last-named consideration is given weight in the cases (Thomas v. Thomas, 212 Ala. 85, 101 So. 738) and by a sort of negative inference in section 7422 of the Code 1923 [Code 1940, Tit. 34, § 35]. Hawkins v. Hawkins, 219 Ala. 31, 121 So. 92."

Upon these considerations we are of opinion that the demurrer to the bill should have been sustained.

After most careful consideration of the evidence we are of opinion that it is in the main without dispute, and that the complainant has not met the burden cast upon him by the averments of his bill. Marsh v. Elba Bank & Trust Co., 205 Ala. 425, 88 So. 423. It shows that the underlying cause of the disruption of the relations between the complainant and his wife was that he consorted with a confidence crook by the name of Whitten who claimed to be a member of the F. B. I., and asserted to complainant that he could obtain for him employment therein at remunerative salary. Whitten dressed well, was a man of good appearance, smooth and plausable, and drove a fine automobile. After gaining Arnold's confidence, Arnold allowed him to use his courtesy card with filling stations, creating an indebtedness against complainant, and procured complainant to join him, Whitten, in signing a note to a bank for a large sum, on the claim of Whitten that the check for his salary or pay was delayed in reaching him. These debts Whitten left complainant to meet, embarrassing him financially and crippling his ability to support his wife and child.

Although Whitten and his wife had rooms in the house of the complainant's mother-in-law, and took their meals there or at some place nearby, on Whitten's claim that he had a weak stomach, Arnold carried him to his home and arranged for Mrs. Arnold to give Whitten his midday meal, and she consented to do so. Thereafter Whitten went to the Arnold home for his midday meal, Arnold at that hour being at his work with the T. C. I. Co., some distance from his home. Whitten in his operations not only fleeced Arnold, but fleeced his brother-in-law French and his wife, Mrs. Arnold's sister, and the mother-in-law; resulting in disrupting the entente cordiale of the entire family relations, estranging Mrs. Arnold and her sister, as the evidence shows, to a degree of hate. Whitten, pending this litigation, was indicted and tried in the federal courts in Birmingham and given a term in the penitentiary for the offense of impersonating a federal officer.

Whitten's daily visits to the Arnold home while Arnold was absent at his work started the neighborhood tongues to wagging, and the subject of the great volume of the testimony offered by the complainant was neighborhood gossip brought on by circumstances of these daily visits and leaving his automobile parked in front of the Arnold home.

The circumstances antecedent to and attending the alleged abandonment of the complainant by the defendant on January 17th, 1941, as appears from the undisputed evidence, is that prior to the marriage of defendant she had had an appendectomy followed by adhesions, and the child, the major subject of this controversy, had to be taken by a Caesarean operation, following which the uterus, according to the medical testimony, had become affixed by adhesions to the pelvic bone, and defendant was in need of another operation to restore her to normal health. Shortly before the date above mentioned the child had been down with influenza, and complainant came down with the flu, and in nursing her child and husband, Mrs. Arnold became ill. Defendant's mother Mrs. Johnson went to the home of Arnold and his wife to nurse her through that illness, and finally took Mrs. Arnold and the baby to the Johnson home, with Arnold's consent, and he went along and remained in the mother-in-law's home for about one month. Shortly thereafter Mrs. Johnson was stricken with influenza and Mrs. Arnold, her husband and the child remained at the Johnson home so that defendant could nurse her mother and assist her in her work. Complainant finally suggested to his wife that they return to their home. At some juncture of time before the alleged separation, Mrs. Arnold, according to her testimony, discovered in the Arnold home a bottle of medicine and a syringe such as is used for treating a certain type of venereal disease, and according to her testimony, when she confronted complainant with these articles and "asked what was this doing in his possession, he refused to answer and refused to tell me anything." She further testified that about the time she discovered the bottle and syringe in her husband's possession, he kept his privates wrapped in gauze. Her testimony on this point was corroborated by defendant's brother Paul Johnson, a man of mature years. She is also corroborated by the conversations over the phone with the mysterious "Mildred" and the complainant which took place while they were living in the Johnson home. The evidence goes to show that after the defendant discovered this condition of her husband, she refused to submit to conjugal embraces with him, and refused to return home with him until, to use her language, "somethings were ironed out", or explained.

■ The evidence shows that the defendant was and is a member of the Woodlawn Baptist Church, and secretary and treasurer thereof and a worker therein. Aside from the testimony showing idle gossip, superinduced by complainant introducing into his home the confidence crook to be cooked for and fed, raked up by complainant on legal advice to get rid of his wife, the evidence shows that defendant, while suffering from impaired health, is an average young woman, the product of an average American home, in no way unfitted to have the custody and care of her son during his tender years.

The evidence further shows that complainant was not without fault in bringing about the family discord.

Our judgment, therefore, is that the complainant, appellee here, has failed to meet and carry the burden of proof imposed by the averments of his original bill.

■ The appellant's cross-bill, and motion for the allowance of alimony pendente lite for the support of herself and minor child, and solicitor's fees, notwithstanding the conceded relation of husband and wife, were disposed of in the interlocutory decree of July 3rd, 1941, not on their merits, but on granting the complainant's motion to test the bona fides of the cross-bill.

In this the court committed reversible error.

■ The dismissal of the original bill does not carry with it the cross-bill, which should be disposed of on its merits. Bell v. Bell, 245 Ala. 478, 17 So.2d 666.

■■ The propriety of an allowance of alimony pendente lite, suit money and solicitor's fees in a proceeding for divorce is rested upon the established or conceded relation of husband and wife, the duty of support resting upon the husband so long as that relation exists. And as a general rule an inquiry into questions of good faith is limited to the existence of the marriage where its existence or validity is disputed by answer. The court will not ordinarily go into the merits of the cause of action, but will limit the inquiry to an examination

94

of the pleadings and affidavits. Ex parte Austin, 245 Ala. 22, 15 So.2d 710; 17 Amer. Juris. 435, §§ 540–541.

The complainant's cross-bill filed to the cross-bill of the defendant, as related to the law of equity procedure, is a mere anomalous parasite, and should have been stricken on defendant's motion. Maya Corporation v. Smith, 240 Ala. 371, 199 So. 549.

The final decree entered in 6 Div. 131, in legal effect enjoins and restrains the husband from living with his wife, and prevents any approach or chance for reconciliation. This is against the policy of the law which looks to and encourages reconciliation between husband and wife so long as that relation continues.

6 Div. 226.

The bill in this case alleges that the complainant and defendant separated on February 16th, 1941, and have been separate and apart from each other since said date. "That defendant more than two years next preceding the filing of this bill of complaint did voluntarily abandon the bed and board of the plaintiff, and said abandonment has been voluntary and continues to the date hereof,"—July 27th, 1943.

The answer of the defendant, appellant here, admits the marriage of the parties in 1935 and denies the allegations of the bill charging two years' continuous voluntary abandonment prior to the filing of the bill.

The case was submitted for final decree by the solicitors of the parties on the record and testimony in 6 Div. 131, which we have just considered.

In addition to the facts heretofore stated, it appears without dispute that, pending the litigation in the other case, the complainant on the advice of counsel broke up the home established by the parties, divided the household goods without defendant's consent, stored what he regarded as her share, and delivered to her attorneys a list thereof. Complainant then moved to his mother's home and entered into a joint arrangement with her to purchase a home for himself, his child and his mother. After he obtained an interlocutory decree giving him the temporary custody of the child, he filed the anomalous cross-bill to defendant's cross-bill, charging defendant with adultery with two different men, and undertook to sustain the same by proof of the gossip, and testimony of a highly biased

witness. The complainant's course of procedure, as the undisputed evidence shows, was to rid himself of his wife.

The court erred in granting the decree of divorce.

The final decree rendered on January 20th, 1943, is reversed and annulled and the original bill filed March 6th, 1941, is dismissed. The custody of the child Benjamin Robert Arnold is ordered restored to the defendant Bessie Mozell Arnold, pending the further litigation on her cross-bill, and subject to further orders of the circuit court.

The interlocutory decree entered on July 3rd, 1941, disposing of the cross-bill by appellant, and her motion for alimony pendente lite is reversed and annulled and the cause as to the cross-bill is remanded. The decree entered on the 26th of January, 1944, on the pleading and stipulation of the parties, granting the appellee a divorce from appellant is reversed and annulled, and the bill in said case is dismissed. The costs in the case made by the original bill, and the costs in the case 6 Div. 226, and the costs of the appeals in both said cases are taxed against appellee.

Reversed and rendered in part and in part reversed and remanded.

GARDNER, C. J., and THOMAS, LIVINGSTON, and SIMPSON, JJ., concur.