This is a child custody case. The Circuit Court of Jefferson County removed the child from the custody of appellant-mother, Nora Ann Parsons, and placed him in the custody of appellees-intervenors, William Henry Parsons and Nancy Parsons. Mr. Parsons is the paternal uncle of the child. The mother prosecutes this appeal.
The dispositive issue for our determination is whether the learned trial court abused its discretion by its transfer of custody. We are also called upon to determine if the trial court erred to reversal by not granting the mother's motion for rehearing grounded on bias. We find no such abuse of discretion or error to reversal, and affirm.
The pertinent facts as revealed by the record are as follows:
Appellant-mother was married to John Wayne Parsons and one child, Barry Parsons, was born of their union.
The mother was divorced from John Wayne Parsons, hereinafter referred to as the father, on March 12, 1975, by decree of the Circuit Court of Jefferson County. This decree granted custody of the minor child, Barry Parsons, to the mother.
On March 21, 1975, the Circuit Court of Jefferson County was notified that the father had been shot to death by an acquaintance of the mother while in the presence of the mother. The court then entered an order vesting temporary custody of the minor child in the father's brother, William Henry Parsons, appellee herein, until a hearing could be held on the matter of the shooting.
Appellees, William Henry and Nancy Parsons, subsequently filed with the court a motion to intervene in the cause and sought permanent custody of the minor child Barry Parsons. Appellees were allowed to intervene, and a full hearing on the matter was held on April 30, 1975.
At the hearing, the mother testified that she first met one James Donald Yerby on March 7, 1975, and did not see him again until the afternoon of March 12, the date of her divorce. The next day, the father met Yerby and told the mother that he would kill Yerby if she did not tell him to leave her alone.
The mother and Yerby continued to associate with each other almost every day through March 20. On that date, they decided to drive to a nearby lake to visit a cousin of the mother. When they had almost reached their destination, a truck driven by the father ran their car off the road. The father exited from the truck, opened the door of their car, and began striking Yerby. The mother then ran for help to a nearby house. While she was fleeing the car, she heard three gunshots. Upon reaching the house, she telephoned for an ambulance, and returned to the car to find that the father had been shot and was seriously wounded. The father died before the ambulance arrived at the scene, and Yerby was taken into custody by law enforcement officers and charged with murder.
The trial judge specifically asked the mother and Yerby whether they intended to associate with each other in the future, and if they planned to marry. The court emphasized the importance which it placed on these questions. Yerby and the mother both answered these queries in the negative.
The trial judge upon conclusion of the hearing entered an order which provided as follows:
 "This cause coming on to be heard, the Court allows the Petition of Intervention of William Henry Parsons and Nancy Parsons, seeking the custody of the child, Barry, and the evidence being heard orally in open court between the mother, Nora Ann Parsons, and the Intervenors, the Court finds that the Intervenors have a fine home and are upright, honorable people who would give the child an excellent home. But the first claim to the child is that of the mother, who must receive the custody unless the Court is reasonably satisfied by the evidence that she is unfit to have the child. The Court finds that the mother and Don Yerby have both testified under oath that they *Page 768 
have no intention whatever of seeing one another again or of marrying one another, and under these circumstances the Court finds that the claim of the mother for custody is sustained, and that it is in the best interest of the child that the custody be vested in the mother."
On September 15, 1975, the appellees filed with the trial court a petition to modify the above decree vesting custody of Barry Parsons in the mother. The alleged ground for the modification was that the mother had married Yerby on September 12.
At the hearing held on this petition it was established,inter alia, that the mother and Yerby had indeed married as alleged, and that the criminal charges filed against Yerby for the death of the father had been dropped due to the mother's testimony that Yerby had acted in self-defense. Both the mother and Yerby testified that at the time of the earlier hearing they had no intention of continuing their relationship, but rather that it had simply developed approximately two months after the hearing, in spite of their former intention.
The evidence introduced at this hearing showed that Yerby had previously been divorced twice. His police record showed that he had been convicted five times of offenses pertaining to drunkenness — three convictions for reckless driving, all reduced from charges of driving while intoxicated, and two convictions of public drunkenness. The most recent offense took place in 1974. His medical records indicated that he had a history of alcohol and drug abuse. Additionally, he had in 1970 been committed by the federal government to a federal rehabilitation facility as a narcotics addict.
Yerby admitted all these matters when questioned by counsel. However, he insisted that he had since rehabilitated himself and was no longer involved with drugs and alcohol. In this context, it is pertinent to note that Yerby volunteered for the federal narcotics therapy program.
Appellant-mother testified that Yerby was an exemplary father to the minor child. Further testimony was that Yerby is now a member in good standing in a local church which he attends regularly with the mother and child.
The minor child's first grade schoolteacher testified that he is in all respects a normal, healthy, well behaved little boy, who is apparently quite intelligent. She further testified that a lapse in his normally high calibre of schoolwork occurred shortly after the mother and Yerby were married, but that this was soon rectified.
The appellees testified that it would not be in the child's best interest to live with Yerby. At this point, it is appropriate to note that appellees are apparently in all respects qualified to have custody of the child. They are financially able to provide for him, and testified that they love him. Additionally, the child is no stranger to the appellees. The appellees and the child's grandparents live two houses apart. The child stayed with the grandparents during the day for the first two years of his life and variously thereafter, and has seen a great deal of the appellees.
At the conclusion of these proceedings, the trial judge awarded custody of Barry Parsons to the appellees. In his custody order, the trial judge specifically found that the mother and Yerby wilfully testified falsely at the first hearing concerning their intention not to associate with one another and not to marry. His order recited that the best interest of the child, considering all the evidence, required this action.
As noted earlier, the mother now appeals the order of the trial judge to this court.
This court is now confronted with a most difficult decision. The argument that the custody of the child should be vested in the appellees, based as it is on Yerby's background and having killed the father, is persuasive but not compelling. Similarly, the contention that the mother should retain custody of the child, in the absence of any evidence of presently existing detriment to Barry Parsons, is also persuasive.
It is the tragedy of child custody cases that some party must always suffer. Parties whose relationships have deteriorated, *Page 769 
often into discord and malice, frequently retain out of the emotional wreckage of their lives only their love for the child. One party must then lose the object of that love.
Such is indeed a grievous and pitiable state of affairs. The judge who must render a decision in such cases, be he on the appellate or trial level, truly knows the meaning of anguish.
It is a settled and salutary principle of law that a trial judge in a domestic relations case will not be reversed by an appellate court save for plain and palpable error. Mullinax v.Mullinax, 56 Ala. App. 676, 325 So.2d 185; Dorminy v. Dorminy,51 Ala. App. 70, 282 So.2d 686. While the provisions of a custody decree will not be altered unless there is a showing of changed circumstances sufficient to justify the alteration,Snead v. Snead, 279 Ala. 344, 185 So.2d 135, the determination of such changed circumstances rests within the sound discretion of the trial judge. See 8 Ala.Dig. Divorce 312.6 (4). Plain and palpable error constituting an abuse of discretion only exists where the reviewing court can draw no reasonable inference from the evidence that the decree below is correct. Northcutt v.Northcutt, 45 Ala. App. 646, 235 So.2d 896.
The pre-eminent principle in child custody cases is, of course, the welfare and best interest of the child. Sutton v.Sutton, 55 Ala. App. 254, 314 So.2d 707; Linderman v. Linderman,49 Ala. App. 662, 275 So.2d 342.
Applying these principles to the case before us, we cannot say that the learned trial judge erred to reversal by his award of custody to the appellees. Here, the trial judge twice conducted hearings involving the same parties; Yerby had killed the father of Barry Parsons, which fact would certainly not facilitate the up-bringing of the child by Yerby; Yerby's past record is somewhat blemished; Yerby has been twice divorced; and the trial judge not unreasonably found that both the mother and Yerby had testified falsely to him. We are aware that a mother is presumed best qualified to have custody of a small child. Burleson v. Burleson, 269 Ala. 637, 114 So.2d 887. However, considering the whole of the evidence set out above, and the aforesaid principles of law, we cannot say as a matter of law that the trial court's action was not in the best interest of the child.
While it is true that the remarriage of a party to a divorce is not of itself such a material change of condition as to justify modification of a custody decree, the effect of a particular remarriage can be shown as indicating a material change of condition since the divorce. McBride v. McBride,268 Ala. 619, 109 So.2d 718; Goldman v. Hicks, 241 Ala. 80,1 So.2d 18; Randolph v. Randolph, 45 Ala. App. 326, 229 So.2d 923;Serotzke v. Serotzke, 335 Ill. App. 485, 82 N.E.2d 375; Johnsonv. Fish (Mo.App.), 197 S.W.2d 990. The character of a divorced mother's present husband is always a pertinent matter in a modification proceeding. Goldman v. Hicks, supra.
We emphasize that by our decision in this case we do not hold that a child custody modification is per se justified because the new spouse of a divorced party has killed in self-defense the other biological parent of the child, or because the new spouse has demonstrated misconduct in the past. All we hold today is that the trial judge did not abuse his discretion, considering the totality of circumstances in this case. The trial judge has had the opportunity to personally listen to the witnesses and observe their demeanor. Our review of the cold pages of a transcript must of necessity defer to such a perspective in the absence of palpable error. We cannot supplant our judgment for that of the trial judge, even if we would have decided the cause differently. Sutton v. Sutton,supra; Northcutt v. Northcutt, supra.
Appellant-mother also advances the contention that the trial judge was biased toward the case, and so erred by not granting her motion for rehearing made on that ground.
Appellant made no motion for recusal during the hearing, but rather made a *Page 770 
bare allegation of prejudice in her motion for rehearing. There is a "substantial burden" on a party alleging bias to show grounds therefor. Street v. Hutto, 46 Ala. App. 324,241 So.2d 848. Where such a party does not meet this burden by legal proof or affidavit, but merely rests upon an allegation, there is insufficient matter for our review. Shell v. Shell,48 Ala. App. 668, 267 So.2d 461. We accordingly cannot consider appellant's contention of bias.
We would finally note, for the benefit of the parties involved, that the matter of custody of a child is never res judicata. See 8 Ala.Dig. Divorce 303 (1), (2). Those who are vested with such a responsibility must always act in such a manner as to justify their trust.
There being no error to reversal in the record, the case is due to be affirmed.
AFFIRMED.
WRIGHT, P.J., and BRADLEY, J., concur.