26 So.2d 73

## BOSARGE v. BOSARGE.

### 1 Div. 253.

Supreme Court of Alabama.

May 9, 1946.

Sullivan, Holberg, Tully & Aldredge, of Mobile, for appellant.

Harry Seale, of Mobile, for appellee.

FOSTER, Justice.

This is an appeal from a decree of the circuit court in equity awarding to appellee (mother) the custody of the two small children of the parties to this suit, making no provision for alimony or support money for the children. They were married in June, 1941. The two children are both boys, one over three years and the other under two years at the date of the decree. Appellant sued appellee for divorce on September 28, 1945, on the ground of voluntary abandonment, and

prayed for a decree awarding him the custody of the children then in his actual control. Appellee filed an answer and cross-bill in a few days denying the abandonment, and prayed for a decree awarding the custody to her, and for alimony, but not for divorce. A motion was made by appellee for an order placing the custody of the children in her, pending a hearing of the cause. A decree dated November 21, 1945, but said to be actually pronounced in October, was made declaring that appellant withdrew his prayer for divorce and appellee withdrew her claim for alimony, and that the custody of the older boy be awarded to complainant and the younger boy to respondent, with mutual rights of visitation, and providing ten dollars a week for the support of the younger boy in the custody of the mother. This was said to be in hope of reconciliation.

On November 29, 1945, respondent filed a motion praying for the permanent custody of both children. The motion was set for hearing, and then continued to January 7, 1946. On January 4, 1946, complainant filed a motion seeking the permanent custody of both children for himself. The hearing was had on January 7, 1946, "on the motion of respondent (appellee) for custody of the children." The evidence was taken orally in open court when all the witnesses and parties were present and testified, resulting in the decree first mentioned awarding the custody of both children to appellee, the mother, but without provision for support money. From that decree the complainant (father) prosecutes this appeal.

The only question involved is whether the decree so awarding the custody of the children to their mother should be affirmed, or reversed, or modified, in an appraisal of the evidence by this Court.

Appellee had been reared by her aunt, Mrs. Blumquist, from small infancy, and was a mother to her, and she was living with this aunt when she married appellant. She and appellant then went to live in the house with his mother and his stepfather, and lived there nine months. The stepfather was named Stauter and lived on Lawrence Street in Mobile. She then became pregnant, and at her request they went to live in the home of the aunt, where they had an apartment. The baby was born in September, 1942, and they continued to live there until he was four months old. Appellant complained of Mrs. Blumquist being too much in the apartment, and too officious and put a lock on the door between them. She was in there often afterwards helping with the baby. Appellee had no maid. On November 22, 1942, she wrote him a note requesting that he make arrangements to live elsewhere. He found an apartment on Partridge Street, and they went into it to live about February 26, 1943. Appellant furnished means for their support and they seemed to be contented in their relations at that location. Later she became pregnant again, and they moved to an apartment on Raven Street. The baby was born May 29, 1944, when they went to the mother-in-law's (appellant's mother), and as soon as she was able they went back to Raven Street. She had bronchitis and a severe cold developing into an abscess of the lung, until July 5, 1944, when at her request a friend called an ambulance, and she was taken to Mrs. Blumquist's again, leaving the children and husband. The aunt had been helping her with the children. She was very sick and had high fever. Appellant was mad about the aunt being there, and would not call an ambulance, and objected to her going because it was raining, but he paid the charges. She was at the aunt's home some of the time in serious illness until the next February 27, 1945, when she went to New Orleans for an operation. The appellant was not inattentive, and he and the doctor made arrangements for the New Orleans operation and treatment, and he carried her and remained during the operation. She had a serious operation, removing a part of a lung. Appellant paid about $2,000, and appellee about $200, which was about all she had. He made great effort and sacrifice to do this. He carried the boys to his mother's home when appellee was carried in the ambulance to her aunt's. Appellee returned from New Orleans June 10, 1945. She testified that she then be-

gan to get dishes and housekeeping equipment, and offered to go back and live with him on several occasions; but he told her he never would live with her again. He denied that with some qualifications about the aunt. She continued to live at her aunt's, and on September 28, 1945, he sued her for a divorce, and for a decree awarding to him the custody of the children.

The record does not satisfy us at all that she voluntarily separated herself from him with the effect of a voluntary abandonment. The trial court probably so concluded. For a year or more she was not physically able to care for herself and children. The most natural course to pursue was to go to her aunt's who had been a mother to her, with the children remaining in the care of appellant at his mother's home, where they were well cared for. There is not the slightest breath of complaint against appellee in any respect, if it was not wrong to go to her aunt's when she was so sick and needed the attention of one occupying the status of her mother. There is some evidence of harsh, unkind language used to her by appellant. This is seriously denied. But he is evidently a man of good character, and industrious habits, and in the main, kind and attentive to her and the children, and so were his mother and stepfather. The children had a good home there. But their temporary presence at the home of their grandmother was due to no fault of their mother, nor by her voluntary act.

It is difficult for us at this distance and from cold type to appraise the relations and conduct of the aunt. But it looks like it was not greatly different from that of the ordinary mother interested in her daughter. Often conflicts arise with the son-in-law. And so they often arise between the wife and the husband's mother. The trial judge made a temporary order in an effort to cause a reconciliation which did not occur. They are not now seeking a divorce, and all are devout Catholics, and may yet be reconciled. The mother has practically gained her health, and the children are so young there is no care of them now that can take the place of a mother's. Our statute, section 35,

Title 34, Code, seems to approve a policy favorable to the mother's custody until they are at least seven years old. McLellan v. McLellan, 221 Ala. 363, 129 So. 1.

The question of who was at fault becomes a pertinent inquiry, but it is not always controlling. It is difficult for us to so appraise the conduct of the mother as sufficient to place her beyond the opportunity to nurture her own infant children at their present tender age. The aunt and mother-in-law may both have been too zealous in the interest of appellee and appellant, respectively, as is too often true for the happiness of the family.

Giving proper presumptions to the conclusion from the evidence taken before the trial court, we think it should not be disturbed.

Affirmed.

GARDNER, C. J., and LAWSON and STAKELY, JJ., concur.