194 So.2d 552

Marion MESSER

v.

Tommy MESSER.

7 Div. 739.

Supreme Court of Alabama.

Jan. 26, 1967.

Love & Love, Talladega, and Kenneth Ingram, Ashland, for appellant.

Dempsey & Hardegree, Ashland, for appellee.

SIMPSON, Justice.

This is an appeal by the mother from a decree of the circuit court in equity granting custody of a little boy, two and one-half years old, to his father.

The most compelling consideration in cases of this type is what, under the circumstances, is best for the welfare of the child.

Cases such as this are the most difficult that we are called upon to decide. Under happy circumstances it seems that little children bring out the best in their parents.

Under unhappy circumstances such as are involved in custody disputes, they bring out the worst. Each, out of zeal to show that he or she is a fit custodian, does all that can be done to impugn the character of the other. We, unhappily are left with the decision based upon the evidence adduced by each.

The mother and father here are both young people. Marion was a student at Auburn in the fall of 1962. She met Tommy during the fall quarter. Shortly thereafter in December, 1962, they were married. The little boy, Steven, was born in August, 1963. The evidence is that Marion was an honor student in high school and every indication is that she would have continued to achieve academic honors in college had not romance intervened. Tommy's education ceased in the 9th grade when he was expelled from high school.

Marion and Tommy lived in Clay County with Tommy's parents for the most part until they were divorced there in May, 1965. At the time of this divorce Marion was awarded custody of Steven. Tommy refused to pay any amount toward his support. All of this was expressed in a written agreement between the parties. Following this divorce Marion took Steven and went to California where her parents live. Thereafter Tommy went to California and these two young people were remarried there in July, 1965. With the help of Marion's father they bought a house and lived in it in California until the latter part of October, 1965. At that time they separated again and Marion and Steven went to her parents' home in the same city. Tommy stayed in the house for approximately two weeks. He came by the home of Marion's parents at the end of approximately two weeks and asked to be allowed to keep Steven overnight. Marion allowed Steven to go with him. Tommy then packed his car and brought Steven back to Clay County, Alabama, all without any notice to Marion. Marion and her father immediately flew to Alabama and got Steven. The writ of habeas corpus initiating this custody proceeding was served on her at that time.

The case was tried in Clay County. Tommy has lived there all of his life. He produced a great many witnesses, many of whom were childhood friends of his, or close relatives, to testify that Marion was unfit to have custody of the little boy. Much of this testimony is of a shabby and unconvincing character. For example, an effort was made to show that during the time of their marriage in Clay County, Marion was keeping company with a young man native to Clay County, and a friend of Tommy's. A former policeman of the city of Lineville testified that on several occasions around 11:00 P.M. he had seen Marion drive through Lineville and some time later the young man would drive through town. Another witness testified that he once saw Marion drive her car out of a dirt road and later saw this young man's car backing down the same road. Still another testified that Marion and the young man had been seen at the same time at noon at a drive-in restaurant. Tommy testified that he twice saw Marion come out of a restaurant or bar, while they were in California, with a baldheaded man. Marion did not deny this but testified that the man was her father. Her father confirmed this.

Marion put on evidence to show that Tommy's character, too, was not without flaws. There was evidence that he had beaten her from time to time, drank to excess on occasion, had never supported her or the baby, had gone from job to job, never keeping the same job for more than a few weeks at a time. He left her in California with no money. She has made the payments on the house. Her parents and grandparents have helped them financially since the day they were married the first time. Tommy had never made any effort to repay this money. In fact he admitted as much himself, contending that it was given to Marion, not him.

The net effect of the testimony in this case is to draw a picture of two young people, very immature and apparently unaware of the grace which Divine Providence has afforded them. They seemingly have not stopped to count their blessings. We can only hope that the passage of time will make them more aware. In the meantime we must be content to leave them as they are and concentrate on what appears

to be best for the little boy under these circumstances.

Marion's parents are willing to help with Steven in every way they can. The evidence is that they enjoy a certain amount of affluence and have a fine home near a school. On the other hand, Tommy's parents, too, are willing to do all that they can for their grandson. They are not as well off financially.

Marion has a job as a stenographer in California where she currently earns approximately $95 a week. Tommy is working now for Ace Moulding Products in Lineville, where he earns $1.75 an hour as a mechanic. He lives with his parents in a rural home about 3 miles from Lineville. Marion lives with her parents in California.

Tommy testified that he would not be willing to give Marion any money for Steven's maintenance and support if the court awarded custody to her. He has not given Marion any money since he left California. She has been paying the house payments and payments on furniture the two bought while he was there.

■ It would appear from a painstaking study of the record that the father and mother here are about equally at fault for their troubles. The effort required to make a marriage work and to provide the most desirable atmosphere for the rearing of children has not been forthcoming from either of them. How then should we determine what is best for Steven? It is not a matter of blind choice. For many years we have adhered to the proposition that all things being equal, the mother is presumed to be best fitted to guide and care for children of tender years. Bosarge v. Bosarge, 247 Ala. 667, 26 So.2d 73; Long v. Long, 239 Ala. 156, 194 So. 190; Blankenship v. Blankenship, 248 Ala. 489, 28 So.2d 409; and numerous other cases.

■ The mother in this case as a teenager, as inadequate as she may have been as a wife, carried this child and gave of herself to bring him into the world. It is a presumption of the law that she is the best suited by nature to care for him. Griggs v. Barnes, 257 Ala. 21, 57 So.2d 61; Morris v. Morris, 19 Ala.App. 216, 96 So. 374; Sparkman v. Sparkman, 217 Ala. 41, 114 So. 580; McLellan v. McLellan, 220 Ala. 376, 125 So. 225. We believe that the evidence adduced below compels the conclusion that the mother's character, though not without blemish, is as good as that of the father. In such circumstances as to the custody of little children the law favors her with the above presumption. We fail to find that the evidence adduced by the father overcomes it, and the court erred in failing to give consideration to this presumption.

■ The rule that the decree of the trial court on evidence taken ore tenus should be given the effect of a jury verdict is without application where the trial court erroneously applies the law to the facts before him. We believe here that he failed to give effect to the presumption of law that a mother, all things being equal, is best suited to have custody of a child of tender years. Griggs v. Barnes, supra; Griggs v. Barnes, 262 Ala. 357, 78 So.2d 910.

Accordingly the decree appealed from is reversed and remanded so that the trial court may reframe it in accordance herewith and include therein a provision for the right of the father to visit the child at the mother's home for such period of time as appears to the court would best subserve the child's interest and welfare.

Reversed and remanded with directions.

LIVINGSTON, C. J., and MERRILL and HARWOOD, JJ., concur.