244 So.2d 595

**Thelma Dora WOODARD**

v.

**Larry Dale WOODARD.**

**7 Div. 19.**

Court of Civil Appeals of Alabama.

Feb. 10, 1971.

Love & Love, Talladega, for appellant.

Hank Fannin, Talladega, for appellee.

BRADLEY, Judge.

Thelma D. Woodard (appellant here) filed a bill seeking a divorce from Larry D. Woodard (appellee here) in the Circuit Court of Talladega County, in Equity, on April 25, 1968, on the grounds of voluntary abandonment and cruelty.

In her bill for divorce, Thelma Woodard also asked for custody of her son, Barry Keith, who was then three years old.

On April 26, 1968 the trial court granted temporary custody of Barry to his mother, Thelma.

Larry D. Woodard filed his answer to the bill on May 15, 1968, in which he denied the material allegations thereof.

Thereupon, the parties to the divorce action entered into an agreement whereby Thelma was to receive custody of Barry, and Larry was to have reasonable visitation rights. And, on the basis of the pleadings, evidence, and said agreement, the trial court granted a divorce to Thelma and also gave her custody of the child.

Then, on October 7, 1969 Larry filed a petition in the Circuit Court of Talladega County, in Equity, seeking a modification of said prior decree insofar as it related to the custody of the minor child of the former marriage of Thelma and him.

Larry alleged in his petition that the circumstances and conditions pertaining to the custody of the child had changed since the divorce decree, and that he should now be given the custody of Barry Keith, because the mother was no longer a fit person to care for him.

On March 2, 1970, after hearing testimony offered by both parties, the trial court granted custody of Barry Keith, who was now five years old, to Larry for the period August 15 to June 10 of each year, and custody to Thelma for the period June 10 to August 15 of each year.

On April 15, 1970 Thelma perfected an appeal to this court from the decree of March 2, 1970.

The question before this court, which is adequately raised by the assignments of error, is whether or not the trial court committed error in finding that there had been material changes in the circumstances and conditions affecting the best interests of the child to such an extent as to warrant a modification of the custody provision of the prior divorce decree by allowing the father, Larry Woodard, to share in the custody of his son, Barry.

We think the answer to this question is in the negative.

Appellant testified that she is presently married to James Hunt, whom she started dating during January 1969. Mr. Hunt is in the Army and stationed in Vietnam.

Appellant also stated that prior to her marriage to Hunt, she had dated William Mitchell, who was, just prior to the filing of the petition for modification, a paroled felon.

Appellant denied dating Mitchell after she married Hunt, and denied having sexual relations with him or any other alleged boyfriend.

The evidence shows that while married to Hunt, and while he was in Vietnam, an altercation took place between the appellant and Mitchell at a motel near Talladega, and as a result, appellant suffered a broken jaw. Appellant's version of this in-

cident was that she went to the motel to look for her sister, and while there, Mitchell commenced to pester her. Appellant's sister corroborated the story of what took place at the motel.

Mr. Hubert Hunt, father of appellant's present husband, testified that appellant had resided in his home since her marriage to his son. He further testified that he had no knowledge of any misbehavior on appellant's part. To like effect was the testimony of several other witnesses called by appellant.

Yet, there were four witnesses called by appellee, all unrelated to him, who testified that they had seen appellant with many different men, including Mitchell, all during a time when she was married to Hunt and while he was in Vietnam.

One of these witnesses stated that she had seen Mitchell in the neighborhood many times, but on only one occasion did she see Mitchell and appellant drinking. On this occasion, the witness stated that they threatened her because they believed she was taking their picture.

There was evidence that during the time that appellant had custody of the child, she had never taken him to Sunday School, whereas he was taken to Sunday School nearly every Sunday by his father and stepmother since his father was granted custody.

There was also evidence that the appellant had neglected the child's teeth, and that appellee had taken the boy to a dentist to have his teeth fixed. Also, the child had never had his childhood shots or physical examinations during the time he was in appellant's custody, whereas appellee, since he obtained custody, had taken care of these physical needs. Appellant's reply to this was that appellee had failed to keep up his support payments.

One witness stated that the child's manners and language were bad during the time he was with appellant, but since being with his father, his conduct had improved.

She further testified that the child would be better off in the custody of the appellee.

The appellee testified that he was now remarried, had a good job that he had been on for a year, and was ready, willing and able to care for his son.

At the conclusion of the hearing, the trial court, with the approval of both parties, talked to the child in the privacy of his chambers. The record does not reflect what was discussed.

As was stated before, and the cases are in agreement, on a petition to modify the child custody provision of a divorce decree, the question of what will serve the best interests of the child or children must always be of paramount concern to the court.

And, on a petition to modify custody, where the evidence is heard ore tenus by the trial court—and here the entire evidence was heard orally by the court—all favorable presumptions attend the findings of the trial court. Snellings v. Snellings, 272 Ala. 254, 130 So.2d 363.

For this court to set aside the findings of the trial court, we would have to make a determination that the findings were plainly and palpably wrong. Snead v. Snead, 279 Ala. 344, 185 So.2d 135.

This we cannot do, for the reason that we think the evidence supports the findings and decree of the trial court.

Appellee cites us to the case of Eaton v. Shene, 282 Ala. 429, 212 So.2d 596, for the proposition that the findings of a trial court, in a proceeding similar to that now before the court, cannot be disturbed on appeal where there was evidence which might have influenced the court's decision, but which is not set out in the record on appeal.

In the cited case, the court clearly based its decision to award custody of the minor child to the father partly on the private conference had with the child in chambers, even though no part of the conference was reported in the transcript.

Whereas in the present case, the trial court merely mentioned the fact that it interviewed the child in chambers. However, it could be reasonably concluded from the wording of the remainder of the decree that the court did consider the results of this conference; yet the decree does not specifically provide that the conference was an aliquot part of the decision of the trial court in the present case, as it did in the *Shene case,* supra.

Therefore, we think, because of the distinction in the factual situations of the two cases, that rather than this point being decisive of the appeal as it was in *Shene,* supra, it should only be considered as supportive of our conclusion that the findings of the trial court to the effect that the best interests of Barry Keith will be served by awarding primary custody to his father, should not be disturbed.

Appellant, in brief, vigorously urges us to adopt the reasoning in Messer v. Messer, 280 Ala. 395, 194 So.2d 552, as being decisive of the case at bar.

We have carefully examined the cited case and consider the facts on which it was based to be sufficiently distinguishable from those at bar to make it inapt as authority for reversal.

In *Messer,* supra, the mother was an honor student who had attended college; the father had only a ninth grade education, could not keep a job, and did not support the child.

Also in *Messer,* supra, there was only one witness who testified that the wife had been seen in the company of a strange man.

However, in the case at bar the evidence showed that several witnesses testified to having seen the appellant in the company of strange men, other than her husband, including a paroled felon. Furthermore, the evidence also showed that the appellee had remarried, been working at the same job for more than a year, and upon obtaining custody of the child, had his medical and dental needs tended to, which it was revealed had been sorely neglected. The evidence did show, however, that appellee had been derelict in maintaining support payments subsequent to the divorce decree.

It was also shown that appellee, after gaining custody, carried the child to church regularly, and there was testimony that the child's manners and speech had improved since being with his father.

We think the above rendition of facts adequately demonstrates the distinguishability of the two cases.

There being no error apparent from the record or briefs warranting a reversal, this case is affirmed.

Affirmed.