## CORNELIUS *vs.* CORNELIUS.

[BILL IN EQUITY FOR DIVORCE ON GROUND OF CRUELTY.]

1. *Jurisdiction of chancellor over custody of children.*—Under the act of 1833, (Clay's Digest, 171, § 20,) the chancery court has jurisdiction, whenever an ineffectual attempt to obtain a disvorce is made by either husband or wife, to make an order giving the custody of the children to either party, as the circumstances of the case may require.

2. *Admissions of husband competent evidence.*—Although the admissions of the husband cannot be made the foundation of a decree of divorce in favor of the wife; yet they are competent evidence against him on the question of the custody of the children.

3. *Custody of child confided to mother.*—Where the wife fails in her application for a divorce, but the proof establishes the fact that the husband is an habitual drunkard, requiring the control of friends to prevent the commission of violence by him when intoxicated, the court will decree to the wife the custody and education of their only child, (a son, three years old when the decree was rendered;) but the order, in such case, should be temporary merely, and subject to future modification, as may be required by the welfare of the child, and justified by the subsequent conduct of the parties.

4. *Dismissal of bill generally, and without prejudice.*—When the complainant fails to establish her case by proof, the bill should be dismissed generally, and not without prejudice, unless some special circumstances are shown.

5. *Costs.*—The chancellor's decree, dismissing the wife's bill for a divorce without prejudice, but decreeing to her the custody of her only child, having been modified on error, at the instance of the husband, so far as to dismiss the bill generally, the costs of the appeal were adjudged against the next friend of the wife, and the costs of the court below against the husband.

APPEAL from the Chancery Court of Madison.

Heard before the Hon. A. J. WALKER.

THE bill in this case was filed, in August, 1852, by Mrs. Emily Cornelius, suing by her next friend, against her husband, William Cornelius; and sought a divorce *a vinculo matrimonii*, on the ground of the defendant's cruelty, resulting from his habitual intoxication; also, a division of the husband's property, and that the custody and education of the only child of the marriage, who was about three months old when the bill was filed, might be committed to the complainant. The defendant answered

the bill; admitting that he was addicted to the occasional use of intoxicating drinks, but denying that he was an habitual drunkard; alleging that complainant was fully apprised of this fault before she married him, and that the marriage was solemnised when he was in one of his worst paroxysms of intoxication; and denying all the charges of cruelty and unfitness for discharging his duties towards his infant son. On final hearing, on pleadings and proof, the chancellor dismissed the bill, but without prejudice, so far as it sought a divorce; but made an order, committing to the complainant the care and custody of the child, who was about three years old when the decree was rendered, perpetually enjoining the defendant from disturbing or interfering with the complainant's control of the child, and taxing the costs against the defendant. From this decree the defendant appeals, and assigns each part of it as error.

ROBINSON & JONES, for the appellant.

No counsel appeared for the appellee.

STONE, J.—The act, entitled an act "to educate children in certain cases," approved January 1st, 1833, declares, "that the courts of chancery in this State shall have power, in all cases of separation between man and wife, and neither party shall obtain a divorce, to give the custody and education of the children to either the father or mother, as to them may seem right and proper; having regard to the prudence and ability of the parents, and the age and sex of the child or children."—Pamph. Acts, 1832–3, p. 18; Clay's Digest, 171, § 20.

In Hansford v. Hansford, 10 Ala. 561, this court, speaking of the statute above copied, said, it "seems to contemplate the action of the chancellor where there is an ineffectual attempt to procure a divorce." Under this construction, which we cordially approve, there can be no question of the chancellor's jurisdiction, under the bill filed in this case, to make the order from which this appeal was prosecuted.

Various exceptions were filed to the testimony, which

the chancellor did not pass upon.   We do not consider it necessary to pronounce an opinion on those exceptions, because the testimony thus excepted to does not change the result.

We agree with the chancellor in the conclusion, that the custody and education of the child of complainant and defendant should, for the present, be committed to the mother.   She is shown by the proof to be a lady of excellent and exemplary character; while the testimony conclusively establishes the fact, that fixed intemperate habits have obtained the mastery of her husband.   He admits this in his answer; and, while admissions cannot be the foundation of a divorce, they are competent evidence on the question of the custody of the child.   Aside, however, from the admissions found in the answer, the testimony on this point is full.

We do not wish to be understood as laying down as a rule, that intemperance in the father will justify a court of chancery in depriving him of the society of his children.   The testimony in this case goes much beyond this. It shows that Mr. Cornelius, in his frequent fits of intoxication, becomes a boisterous, raving madman; that these fits last for days, and when under their influence, the care and control of friends have to be called into requisition. A boisterous man, maddened and demented at frequent and short intervals by intoxicating drinks, who requires at such times the watchful care of friends, is certainly not a suitable guardian for either the person or moral training of a child of tender years.   Moreover, it is known to all, that habits of this kind become usually more inveterate with increasing years.   The welfare of the offspring is the controlling consideration, in applications such as this. We think we promote that welfare by placing the child in the custody of the mother.—See a full description of this subject in Bishop on Marriage and Divorce, chap. 31, book VI, §§ 632 to 645.

It being thus shown that orders of this kind are made for the benefit of the child, it follows, that what may benefit him to-day, may be injurious to him at some future time.   Permanent fitness or unfitness for the control of

children, dependent on such a cause as this, cannot be predicated of any human being. This child is taken from his father and natural guardian, not on account of any fixed, incurable moral obliquity of character, but because of his unfitness, growing out of intemperate habits. Those habits may change, and he may again become, as he evidently has been, a good and valuable citizen, every way qualified to "train up his child in the way he should go." Should he so reform, and give satisfactory evidence that such reformation is permanent, there certainly should be no insurmountable barrier to his recovery of his child. That a temporary order may be made, subject to future modifications, as circumstances may render the same proper, is fully shown by the following authorities: Codd v. Codd, 2 Johns. Ch. 141; Barren v. Barren, 4 *ib.* 187; Bishop on Marriage and Divorce, § 634.

There would be much difficulty in laying down an absolute rule, fixing a period when the custody of a male child should be taken from the mother and given to the father. If all parents were alike suitable, possibly we might do so. As we before remarked, a father or mother who is every way qualified for the trust at one time, may be wholly unfit at another. Where there is no unfitness in the mother, evidently the child should remain with her, until he has reached an age when he can dispense with those tender offices which only a mother can bestow. At what particular age that period will arrive, we will not undertake at this time to determine. On the other hand, if one parent be a suitable custodian of the child, and the other not, and this suitableness of the one and unfitness of the other continue, the child should be put under the care of the one who is suitable, and no change should be afterwards made. This permanent unfitness cannot, however, be known in this case.

The chancellor erred in making the injunction perpetual. It should have been only until the further order of the court. After the child attains a suitable age to be removed from his mother, if Mr. Cornelius give satisfactory evidence of reformation, the chancellor, on his petition, will make the proper order in the premises. This

order might be made sooner, if Mrs. Cornelius should become less suitable to have the care of the child than Mr. Cornelius.

It is objected that the chancellor erred in dismissing, without prejudice, those features of the complainant's bill which prayed for divorce and alimony. We think there are no circumstances disclosed by this record, which rendered this order proper; and having modified the decree in other respects, we will here make an order that the bill, so far as it prays divorce and alimony, be dismissed generally.—Rumbly v. Stainton, 24 Ala. 712, 719.

The decree of the chancellor is reversed;.and this court, proceeding to render such decree as the chancellor should have -rendered, does hereby order, adjudge and decree, that the said William Cornelius be, and he hereby is, enjoined from removing the said child from the care and custody of the said Emily Cornelius, until the further order of the chancellor in the premises. Let the complainant's bill, so far as it seeks divorce and alimony, be dismissed out of court. Let the costs of the court below be paid by the said William Cornelius, and the costs of this appeal by the complainant's next friend.—See Mosser v. Mosser, 29 Ala. 318; Gray v. Gray, 15 Ala. 779.