326 So.2d 124

**Bill THOMPSON**

v.

**Veda Dawn THOMPSON.**

**Civ. 484.**

Court of Civil Appeals of Alabama.

Nov. 5, 1975.

Rehearing Denied Dec. 10, 1975.

Love, Love & Lawrence, Talladega, for appellant.

**58**

McDuffie & Holcombe, Tuscaloosa, for appellee.

BRADLEY, Judge.

This is a child custody case. Appellant, the father of William Mark Thompson, age six, appeals from an order refusing to remove the child from the custody of his mother, the appellee. The order of the trial court is affirmed.

Appellant and appellee were married on October 7, 1968, and divorced by decree of the Circuit Court of Tuscaloosa County on January 26, 1970. Custody of Mark, as the boy is known, the only child of the marriage, was awarded to appellee with visitation privileges reserved to appellant, and child support was set at $40 per month.

Appellant filed a previous petition to modify the child custody arrangement on April 19, 1972, alleging interference with his visitation privileges. However, at the time the present petition for modification was filed, the only substantial change ordered by the court had been an increase in child support to $100 monthly.

On August 17, 1973 appellant filed the petition before us now in Tuscaloosa County Circuit Court, alleging that a substantial change in circumstances had occurred. The petition sought to have the permanent custody of Mark awarded to appellant, and also asked for an order restraining appellee from taking Mark out of Alabama during the pendency of the hearing. The requested restraining order was issued on August 17, 1973, and hearing set for November 14, 1973.

The hearing commenced on that date, but was not completed then. For various reasons it was postponed several times. Numerous appearances by counsel were made and several motions filed during this interval. It is not necessary to set forth a statement of all those proceedings.

On October 30, 1974 the concluding session of the hearing on this petition commenced. The hearing lasted for four days, and the trial court heard lengthy testimony ore tenus. The transcript of this hearing

is over four hundred pages in length, and is supplemented by exhibits and the text of several depositions.

On November 9, 1974 the trial court entered a decree expanding appellant's visitation rights, lowering child support to $75 per month, but denying the requested modification in custody. It is this latter portion of the judgment which is appealed.

The evidence discloses that, at the time of the hearing on the matter appealed from, appellant, a lawyer, had remarried and was living with his second wife in Talladega. Appellee has remarried twice, the second marriage resulting in a divorce, and currently lives with Mark and her third husband, a drapery salesman, in Orlando, Florida. The two parties and their present spouses all have full-time jobs. Mark is enrolled in a pre-school kindergarten program where he spends half of each weekday, and in a nursery school where he spends the remainder of the day while his mother is at her job.

It is undisputed that appellee and her husband can provide for Mark financially, especially when the child support payments are taken into account. The home in Orlando has several bedrooms, den, two bathrooms, and other rooms. Appellee's husband does use some of the space in the house, however, to store supplies and machinery used in his business. Mark has a bicycle, wagon, swing set and other toys.

The financial ability of appellant is comparable, if not better. He has a comfortable home, a growing practice, and has set up a testamentary trust fund for Mark. He pays for Mark to fly up from Orlando by airplane on visitations, and takes Mark horseback riding.

The point of contention raised by the petition is that appellee is unsuited psychologically and morally to have custody of the boy. Evidence presented by appellant tended to portray appellee as engaging in sexual misconduct; administering punishment to Mark irregularly and sadistically;

failing to provide Mark with medical care when needed; keeping an untidy apartment for the boy to live in; inadequately feeding, clothing, and bathing him; unable to hold a job; untruthful; argumentative with landlords, tradespeople, and proprietors of nursery schools; callous toward Mark and appellant; and irreligious.

Appellant also produced the deposition of Dr. Robert Estock, a child-psychiatrist who had examined Mark. Dr. Estock reported that Mark had an emotional disturbance of less than psychotic proportions, probably caused by the instability in his life due to the breakup of his parents' marriage and the later custody and visitation situation. Dr. Estock also said that Mark had a positive relationship with his father, that it would be stressful for Mark to be removed to a place where his father could not visit him, but that there was insufficient observation of Mark's relationship with appellee to justify an opinion that Mark should be placed in appellant's custody.

Additionally, appellant brought forth much testimony from character witnesses to the effect that he and his present wife are capable of raising Mark successfully and enjoy an excellent reputation in Talladega.

Appellee and her husband disputed through oral testimony and documentary exhibits the implications raised by appellant's evidence. They presented medical records of Dr. Peter Trice, including a recent record of medical examination showing Mark to be in good health; appellee testified that Mark's pre-school kindergarten was an experimental enriched program very beneficial to its pupils; the charges of sexual misconduct were denied. Further, on cross-examination the witness whom appellant had called to testify that appellee's apartment was unclean admitted to having some hostility toward appellee because of a landlord-tenant dispute, and that the inspection of the premises had not

been made until appellee had moved out and a break-in by unknown persons had occurred.

On the question of physical punishment, appellee denied using arbitrary or excessive corporal punishment. Appellee's husband testified that Mark was disciplined by moderate spanking with a belt, but that this occurred less often than twice a month, and only when Mark lied, was insubordinate, or was cruel toward animals.

Appellee's husband also testified that, although the family did not attend church or send Mark to Sunday School, the members of the family did believe in a supreme being, and that Mark received spiritual training at nursery school and in the home.

Appellee also testified that appellant was unfit to raise Mark due to emotional immaturity. She testified that he frequently threatened physical violence against her, and had committed acts of violence on her in the past. She also related an incident in which appellant had lost his composure in public while visiting her after the divorce. There are also some photographic exhibits in the record which appellee claims suggest that appellant has engaged in sexual misconduct.

It is unnecessary to go into any of this evidence in detail. The recitation above is sufficient to show the course the hearing took, and the types of proof the respective parties were relying on.

Appellant's arguments on appeal are apparently intended to support the conclusion that the trial court, in denying the modification sought, improperly invoked the presumption which favors awarding the custody of a child of tender years to its natural mother.

■ First, appellant's assignment of error eight asserts that the "tender years" presumption violates his rights to equal protection under the law. We are not persuaded to accept this proposition.

*Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), a case not mentioned in appellant's brief, is the leading authority in this area of constitutional law. In that case the United States Supreme Court invalidated an Illinois statute which omitted unwed fathers from the definition of "parent" and thereby presumed them unfit to raise children. Despite a seemingly contrary result, *Stanley* provides grounds for upholding the Alabama presumption.

■ The statutory presumption in *Stanley* was found to be arbitrary. By contrast, the tender years presumption applied by Alabama courts is rational. It has evolved over many decades and has been refined by the actual experience of many able judges and attorneys. It is aimed at the legitimate goal of providing the most favorable environment for young children. The presumption was fashioned in the context of observed reality, not abstract contemplation.

■ The presumption is not absolute, it is rebuttable. *Turner v. Turner,* 46 Ala. App. 350, 242 So.2d 397. If proof is made that the natural mother is not furthering the best interests of the child, then the presumption is vitiated. *Calhoun v. Calhoun,* 278 Ala. 610, 179 So.2d 737.

■ Finally, the presumption in no way works to exclude the father from the custody proceedings or otherwise impair his procedural rights. To the contrary, the presumption comes into application only when the father is before the court seeking custody of the child. The impact of the presumption is not to deny him standing to present his case, but merely to allocate to him the burden of showing that the mother is not the best custodian. *Turner v. Turner, supra.*

The statute held unconstitutional in *Stanley v. Illinois, supra,* was infirm in every one of these aspects. The Alabama

tender years presumption furthers the very constitutional guarantees violated in Illinois.

Appellant's second main contention is that the tender years presumption is not applicable in this case because the child is a boy. We find ample authority that the presumption includes children of both sexes. *Messer v. Messer,* 280 Ala. 395, 194 So.2d 552. As has been said before, the presumption is rebuttable. Evidence in rebuttal must be dealt with on a case-by-case basis. *Featherston v. Featherston,* 271 Ala. 238, 123 So.2d 120. The sex of a child is material to the extent that it is shown that the particular child will fare better in the custody of a parent of one sex or the other. The trier of fact must then determine the weight to be given such evidence.

Finally, appellant argues that it was error for the trial court to leave the child in the custody of the mother where it was undisputed that all the factors were resolved in favor of the father. While this argument may be a correct statement of the general law, we feel it is not suited to the facts in the record before us. The evidence in support of appellant was lengthy, but it was not conclusive. There is evidence below, less discursive, but still present in the record, to the effect that appellee-mother was a fit parent. The rule is well established that the trier of fact has the responsibility of deciding which testimony heard ore tenus is correct and which inferences should be drawn therefrom. *Air Movers of America, Inc. v. State Nat. Bank,* 293 Ala. 312, 302 So.2d 517. We do not feel the mere fact that more witnesses testified for one party than for the other requires us to depart from this rule.

At the close of the hearing on this cause, the trial court announced its findings, stating in part:

"It is the judgment of the Court that the petitioner, Mr. Thompson, has not made out a case under Alabama law, those cited cases included, that would justify a transfer of custody of the child from the mother to the petitioner. I believe that even if all the facts that have been presented in these four days, including not just the last three, but the original—all of the facts presented in these four days, had that been known and presented to the Court at the time of the original divorce, I am convinced that custody of the child then—as now, should remain with the mother. That does not say that her conduct was completely exemplary or circumspect, and certainly it isn't saying that Mr. Thompson's conduct is bad or was bad. . . ."

*Gould v. Gould,* 55 Ala.App. 379, 316 So.2d 210, cert. den. 294 Ala. 757, 316 So.2d 214, explicates the time-honored analysis which must be applied in appellate review of the trial court's decision:

"First; it is well established that where testimony is taken *ore tenus,* the finding by the trial court has the weight of a jury verdict and such finding will not be disturbed unless plainly and palpably wrong and contrary to the great weight of the evidence. *Blankenship v. Blankenship,* 266 Ala. 182, 94 So.2d 743.

"Second, divorce decree providing for custody of a minor child will not be modified unless changed conditions are shown which justify such modification. *Snead v. Snead,* 279 Ala. 344, 185 So.2d 135.

"Third, in proceeding to modify a divorce decree respecting custody, each case must rest on its own facts and circumstances with the principle always in mind that the welfare of the child is of paramount importance. *Featherston v. Featherston,* 271 Ala. 238, 123 So.2d 120.

"And, finally, it is held in this state that a party seeking modification of a

child custody provision of a divorce decree must allege and show some change of conditions or other substantial reason for modification. *Perez v. Hester, 272 Ala. 564, 133 So.2d 199.*"

Applying this analysis, we see no unsound application of law or palpable error. The findings of the trial court based on testimony ore tenus are entitled to a presumption of correctness that we shall not overturn in this case. We therefore conclude that the trial court committed no error on the grounds assigned by appellant.

In view of our findings that no error has occurred, we affirm.

Affirmed.

WRIGHT, P. J., and HOLMES, J., concur.

## ON REHEARING

BRADLEY, Judge.

Appellant, in his application for rehearing, presents no new matter which was not carefully considered in the original opinion.

However, we must take this opportunity to recognize an omission in our quotation of the case correctly cited as *Gould v. Gould,* 55 Ala.App. 379, 316 So.2d 210, cert. 294 Ala. 757, 316 So.2d 214. Our quotation should have included:

"Fourth, where the children are of tender years, the mother is generally considered better fitted to exercise custody unless she is unfit for the trust. *Lansdell v. Snoddy,* 269 Ala. 344, 113 So.2d 151."

The omission was unintentional and does not alter our holding in any detail. We include the omitted portion here to affirm our intention to quote the entire passage in our original opinion.

In view of the finding that all matters raised by the petition for rehearing had been properly considered previously, we deny the petition.

Opinion extended.

Application for rehearing overruled.

WRIGHT, P. J., and HOLMES, J., concur.