This is a child custody case. The parties were divorced on July 6, 1973. Custody of the only minor child of the marriage, born December 15, 1971, was awarded to appellant-mother and appellee-father was ordered to pay $150.00 monthly child support. On February 4, 1975, the father filed a petition for modification seeking to have custody of the child placed in him. A hearing was held in the Circuit Court of Tuscaloosa County, on May 12, 1975. At this hearing the trial judge sitting without a jury heard extensive oral testimony from the parties and numerous witnesses.
The decree entered on September 23, 1975 granted the father's petition for modification: the decree placed the child in the father's custody subject to the mother's visitation privileges, and it terminated the father's child support payments.
On October 7, 1975 the mother filed a petition for rehearing, supported by a brief which appears in the record. It is from the denial of this motion that the present appeal is taken by the mother.
The mother's brief on appeal argues several issues. Of these, issue IV raises questions regarding an alleged arrearage in child support payments owed by the husband at the time of the modification decree. The appellant contends that when a father who comes into court seeking child custody is in arrears for support payments, he must show a sufficient excuse for his failure to pay or he will be denied custody, Cox v. Cox,48 Ala. App. 574, 266 So.2d 784.
It does not appear from the record that the existence of an arrearage was established. The mother's brief in support of her petition for rehearing does refer to an arrearage of $2,341.40. However, this brief has no evidentiary value, is not verified, and is nothing more than counsel's argument. No reports, ledger sheets or other records of the register appear in the record. There is no documentary evidence of arrearage.
There is very little actual oral testimony, and such testimony is contradicted by the father's testimony denying arrearage for the most part and explaining why some items were not paid. There is no indication that the father was unwilling to settle all accounts or do whatever equity required.
The mother also contends that evidence as to arrearage was not entertained because the trial court wrongly deemed that matter irrelevant. Three excerpts from the transcript are presented in support of the contention.
On their face these excerpts standing alone do show the trial judge stating that the relevance of the matter of arrearage is doubtful. An examination of the entire transcript reveals that these remarks were made during two colloquys between the judge and the parties' lawyers and that no testimony was excluded by virtue of these remarks. In one instance the excerpt was followed by a "voir dire" examination of the witness conducted by appellee's counsel, with the express consent of appellant's counsel. This voir dire elicited a full page of testimony touching on the alleged arrearage. Appellant's lawyer was then allowed to cross-examine the witness, and asked several questions about overdue medical payments.
In the second instance the remarks were made during an interruption of appellee's, *Page 394 
not appellant's, examination of the witness. Despite the comment as to relevancy, the examination as to arrearage continued, and was followed by uninterrupted cross-examination.
The excerpts pointed to by appellant present us nothing to review. They were not rulings of the trial court. They resulted in the exclusion of no evidence. In one instance the judge was not even remarking on appellant's questions, but was directing his remark to appellee.
Granted, the testimony as to arrearage was not extensive. However, this is entirely attributable to the course of questions posed by counsel and not to any limiting role of the trial judge.
Under this state of the evidence there were conflicting inferences to be drawn by the trial judge as to the equity of placing custody in the father where there was the possibility that an arrearage existed. The trial court's finding, based on oral testimony, is presumed correct, Roubicek v. Roubicek,246 Ala. 442, 21 So.2d 244. There is no reversible error on this issue.
Issues I, II and III in appellant's brief argue that the decree of modification is not supported by evidence showing changed circumstances or moral unfitness of the mother sufficient to overcome the presumption that the mother is best suited to have custody of the child.
The trial court's decree was based on conflicting evidence taken orally. The decree is thus attended with a presumption of correctness, and should be affirmed unless plainly erroneous,Roubicek v. Roubicek, supra.
The record in this case is lengthy. There is no need to detail every particular, but the general tenor of the proofs can be discerned from the following summary, which is meant to be illustrative rather than comprehensive:
Linda currently has two children: the child in question and an illegitimate child born in 1974. She is receiving support from the illegitimate boy's father as well as from appellee.
She currently lives in an apartment with another single mother, who also has two children. A social worker's report indicates that this home is clean and well-furnished.
At the time of the divorce in 1973 the parties were residing at a trailer park in the Tuscaloosa area. The father moved out, and the mother and child remained there. Subsequently the mother's relations with neighbors worsened. According to testimony of two neighbor women and the trailer park manager, appellant's trailer was frequently the site of noisy gatherings. On one occasion appellant's sister, a minor, was observed consuming alcoholic beverages at the trailer. A carload of young men visiting the trailer cursed one of the neighboring women. The four year old child had learned to make obscene gestures at several adults before she learned to talk. One party resulted in a late-night bottle throwing incident. One witness stated the child was present at that party. These events led to several loud arguments with the neighbors. Appellant was asked by the manager to vacate the trailer park.
Two other witnesses testified that they did not know appellant personally but knew of her reputation. One witness stated her reputation was bad; the other stated that she was reputed to frequent bars in Tuscaloosa.
Appellee testified to several incidents involving appellant. On one occasion the mother had attended a "whiskey party," leaving the child with her sisters. There were four separate occasions when the mother left the child with its father or another relative, promising to return for the child in the afternoon or early evening, but not returning until late at night. On one of these occasions she did not return at all, and when the father located her *Page 395 
she refused to accept the child, locking it out on the front porch while she and a gentleman friend remained inside.
The father stated that he hoped for a reconciliation throughout 1974, and in fact moved in with appellant after learning of her second pregnancy, even though he knew he was not the father of the second child. He paid all the rent and household expenses for this period. He moved out approximately two months after the birth of the illegitimate child. His stated reason for departing was that appellant resumed going to bars until late at night, leaving him to sit with both children. According to the father's testimony, the mother gave either no indication or a misleading indication of where she could be reached at night: on at least one occasion she said she was going to the Bahnhof, which she explained was a place university students went to study. The Bahnhof is a tavern in Tuscaloosa.
Appellant testified that she provided a good home environment for the children, and that she did not drink. However, a letter in her handwriting invited the father of her illegitimate child to come over to her apartment and get drunk together as they had in the past. She testified by way of explanation that the letter was merely a joke.
The overall tendency of the evidence, though in dispute regarding many details, does support the decree below.
We are not impressed with appellee's argument that the presence of the illegitimate half-brother, Scotty, per se renders the mother unsuitable. Conceiving a child out of wedlock is not condoned, but where a baby has been brought into this world without benefit of married parents, our law does not compound its misfortune by declaring him an outcast from his natural mother's hearth and home. No public policy militates against the presence of legitimate and illegitimate siblings under one roof. The very existence of the adoption of legitimation statutes contemplates that the illegitimate's status might someday be legally changed to remove any disability or stigma.
Nor does giving birth to an illegitimate child conclusively denote an immorality sufficient to deprive the mother of child custody. If such were true, a woman would automatically be deprived of custody over her own illegitimate offspring. This is neither the law nor custom in Alabama.
However, in other important regards the evidence does support the trial court's modification of custody. This is so even though the evidence of the mother's "immoral" conduct is less striking than in some cases this court has had to review.
In Thompson v. Thompson, 57 Ala. App. 57, 326 So.2d 124, there was extensive evidence of the custodial parent's involvement in numerous sexual escapades. Nonetheless, the trial court's order leaving the child with that parent was affirmed because there was no conclusive evidence that the child was aware of or adversely affected by the parent's course of conduct. Whatever other shortcomings that parent had, the trial court had found that the parent's relationship to the child was characterized by interest and concern for the child's welfare.
In the instant case, the evidence as to possible sexual conduct by the mother falls far short of what was disclosed inThompson. Nevertheless, we affirm the trial court's decision to take the child out of the mother's custody. The evidence in this case is sufficient for the court to find that the mother places her entertainment and social pursuits ahead of her regard for the child. The question is not the presence or absence of sexual activity in her social life; rather, the trial court must determine whether the emphasis on social life, promiscuous or chaste, detracts from a stable, worthwhile home environment for the child. The court below presumably found that the home life created by appellant *Page 396 
did leave something to be desired, and there is legally sufficient evidence to support that decision.
There being no reversible error, the decree of the trial court is affirmed.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.